[No. 2964.   June 9, 1926.]

MATHIEU v. ROBERTS.

[247 Pac. 1066.]

### SYLLABUS BY THE COURT

Lien statutes construed, and **held**, that though lien claimant,by voluntarily parting with possession of a chattel upon which he has a lien, does not thereby waive the lien, but waives the right to possession thereof, and may not repossess the same merely on the strength of this lien, in the absence of any special circumstances showing that he is entitled to the possession thereof.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by Al Mathieu against A. A. Roberts to enforce a lien on an automobile. From a judgment for defendant, plaintiff appeals. Affirmed.

T. J. Mabry, of Albuquerque, for appellant.

John F. Simms, of Albuquerque, for appellee.

### OPINION OF THE COURT

BICKLEY, J.   In his first amended complaint plaintiff alleges as his first cause of action that the plaintiff had sold to the defendant certain parts to be used upon, and which were in fact used upon, defendant's automobile, which parts were valued at $73.75; that the amount is due and remains unpaid;

---

[1]  11CJ p. 398 n. 1; p. 399 n. 3; p. 401 n. 4, 6; p. 726 n. 51, 52, 53; 37CJ p. 337 n. 68; p. 342 n. 71; 34Cyc p. 1388 n. 59; p. 1389 n. 60, 61; p. 1392 n. 85; 36Cyc. p. 523 n. 23.

that' demand had been made upon defendant to sur-
render up to plaintiff the automobile for the pur-
pose of satisfying said lien and claim; and that said
demand had been refused. The second cause of
action is essentially like the first so far as the de-
termination of the case is concerned. The plaintiff
prays judgment against the defendant for the two
accounts and attorneys' fees and for other costs in-
curred in enforcing his lien herein, and for the pos-
session of said automobile that he may satisfy his lien.
From statements in appellee's brief, it appears that
with the complaint the plaintiff filed his affidavit
stating on oath that he was entitled to the immediate
possession of the automobile mentioned in the affi-
davit, and that the same was unlawfully withheld by
the defendant, and further stating that the right of
action of the plaintiff and originated within one year.
Bond was given and approved, and an ordinary writ
of replevin and summons were issued directing the
sheriff of Bernalillo county to take the automobile
from the defendant and deliver it to the plaintiff
and to summon the defendant to answer for the
unlawful detention of the goods in damages amount-
ing to $99.30, which was the combined amount of
the two accounts and attorneys' fees and costs of
·suit. The defendant demurred to the complaint,
setting up three grounds: (1) To the first cause
of action, because it did not state facts sufficient to
show any right to the immediate possession of the
automobile by the plaintiff nor any wrongful deten-
tion by the defendant; (2) to the second cause of
action on the same ground; (3) that in neither cause
of action stated in the complaint was there any
ground alleged sufficient to entitle the plaintiff to
the immediate possession of the automobile or to
show that the defendant had wrongfully withheld
the same from the plaintiff.

The trial court sustained the demurrer, and, the
plaintiff refusing to amend, final judgment was ren-
dered adjudging that the defendant have and re-
cover from the plaintiff and of his securities on

the replevin bond the sum of $300, with costs, to which the plaintiff excepted, and in open court prayed an appeal. So far as the record shows, this was the only final judgment that was rendered in the cause.

Appellant assigns errors, three in number, but declares in his argument that they may be properly covered as follows:

"(1) Was a cause of action stated?

"(2) Were we entitled to possession of the automobile in order to satisfy our lien?"

Under the first point, appellant contends that his complaint set forth a cause of action on account whether or not plaintiff was entitled to possession of the automobile perforce other allegations in the complaint. From the prayer of the complaint and the nature of the judgment, it appears that the trial court was permitted without objection to consider that the action was primarily one to recover possession of the automobile. The only judgment before us for consideration is the one in favor of defendant against plaintiff and his sureties on the replevin bond, which proceeds on the theory that plaintiff failed to prosecute the replevin action with effect; that is, that he did not show that he was entitled to sustain an action in replevin. Therefore we think that the appellant is not in a situation to complain that the court did not overrule the demurrer in part and permit him to proceed on his alleged cause of action for personal judgment on account.

The next question is, Was the plaintiff under the allegations of his complaint entitled to possession of the automobile in order to satisfy his lien?

We may assume that the complaint alleges that the plaintiff had a lien on defendant's automobile. It is not alleged that plaintiff ever was in possession of such automobile, or that, having been in possession of it, he had been wrongfully deprived thereof by the defendant. We assume that the plaintiff was in

possession of the automobile at the time he furnished the parts therefor, and that he voluntarily surrendered the possession of said automobile to the defendant.

Under section 3333 of the 1915 Code, as amended by chapter 65, Laws of 1917, and subsequently by chapter 24, Laws of 1923, a person who furnishes parts for a motor vehicle at the request, or with the consent of any person lawfully in possession of such automobile has a lien upon such motor vehicle or parts thereof for the sum due for repairing the same, and for labor furnished thereon, and may detain such motor vehicle in possession until such lien is paid. Section 3339, as amended by said acts, provides that—

"Any lien acquired under the provisions of this law except those provided in sections 3336 and 3337 hereof shall become void, if the person entitled to the same shall consent that the property subject thereto be removed from his control or possession, except as against the person at whose request the repairs or parts were furnished and the labor performed."

It is apparent from these amendments that the lien is not now waived by "a voluntary parting with the possession of the thing," as was the case under section 3333 as originally enacted. The lien continues, although possession is parted with.

Artisans, mechanics, and others mentioned in said action 3333 as amended have, under the statute, three ways in which to enforce payment of the lien. They may retain possession under said section 3333 until the lien is paid. Sections 26, 27, and 28 of chapter 24, Laws of 1923, provide the other two methods. These sections embody the substance of original sections 3340, 3341, and 3342 of the Code, and provide that—

"The lien claimant when the property subject to the lien is under his control or in his possession may, after the debt for which the lien is claimed becomes due and payable, serve the person or persons against whom the lien is sought to be enforced with a written notice setting forth an itemized statement of the amount of indebtedness, and if the same be not paid within ten days after the service of

said notice the property may be advertised by posting as hereinafter provided, and sold to satisfy the indebtedness."

Section 27 and 28 control the method of sale and disposition of the proceeds thereof. So the Legislature thought it advisable to provide a method for enforcing the lien when the lien claimant was not in possession, and this they did in the first sentence of section 26, c. 24, Laws of 1923, as follows:

"In order to enforce any lien under this act the procedure shall be the same as in the case of the foreclosure of a chattel mortgage if suit be filed in court."

As we have no statutory procedure for the foreclosure of chattel mortgages except when the mortgagee is in possession, by notice and sale, and section 26 of the act provides that foreclosure otherwise "shall be the same as in case of the foreclosure of a chattel mortgage if suit be filed in court, "it is apparent that the Legislature referred to the equitable action of chattel mortgage foreclosure.

We do not understand that the appellant contends that his complaint sets forth an adequate cause of action for a chattel mortgage foreclosure. In order to get at the right of the plaintiff to the possession of the automobile under the lien, however, it may be well to consider some of the characteristics of a chattel mortgage and the foreclosure thereof and right to possession under the lien of such mortgage. In the article on Chattel Mortgages, 11 C. J. § 1, it is said:

"A chattel mortgage is a conveyance of some present legal or equitable right in personal property, as security for the payment of money, or for the performance of some other act. In some jurisdictions a chattel mortgage operates as a sale of the subject matter on condition subsequent, passing a present legal title subject to be defeated by the performance of the condition, while in other jurisdictions, as a result either of statutory enactment of judicial decision, it is regarded as constituting a security only, and as merely creating a lien on the subject matter, the variance of opinion on this subject being similar to that which prevails with reference to mortgages of real property. In some jurisdictions, following the lien theory, no title is regarded as passing under a chattel mortgage until after foreclosure and sale, while in other jurisdictions the mortagee, after

condition broken, is regarded as having become vested with a special property in the subject matter of the mortgage."

We are aligned with the jurisdictions mentioned in the last clause of the foregoing quotation.

In Enfield v. Stewart, 24 N. M. 472, 174 P. 428, 2 A. L. R. 196, we held that a chattel mortgage as between the mortgagor and the mortgagee does not convey the legal title to the mortgagee, but is a mere lien. In Kitchen v. Schuster, 14 N. M. 164, 89 P. 261, as well as Enfeld v. Stewart, supra, it is pointed out that by our statutes (section 571, Code 1915), "in the absence of stipulation to the contrary, the mortgagor of real or personal property shall have the right of possession thereof," and in Kitchen v. Schuster we pointed out that under C. L. 1897, § 2367 (now section 574 of the Code), "after condition broken, the mortgagee or his assignee may proceed to sell the mortgaged property, or so much thereof as shall be necessary to satisfy the mortgage and costs of sale; having first given notice of the time and place of sale," etc. We there said that upon condition broken the right of possession followed by virtue of the statute, but that, independent of the statute, an unconditional sale by the mortgagor of mortgaged chattels worked a forfeiture of right of possession bestowed by the mortgage upon the mortgagor, and thus to enable the mortgagee to maintain replevin or trover. The usual chattel mortgage form provides that the mortgagee may take possession of the mortgaged chattels in case of the breach of the mortgagor's covenants. It has not been decided, so far as we know, that a chattel mortgagee having mere lien has a right to recover possession of the mortgaged chattels until a condition of the mortgage has been broken.

We apprehend that the statutory lien in favor of artisans and mechanics might be supplemented by agreement between the parties with reference to the time when the lien debt should become due with covenants as to possession in case of condition broken, but we are here dealing exclusively with the

statutory lien. Any person who repairs any motor vehicle or furnishes parts therefor has a lien upon such motor vehicle for the sum due therefor, and it is to be assumed that the sum is due when the parts are furnished or the repairs are made. The lien is created coincidentally with the sum becoming due. He has it in his power to detain the motor vehicle in possession until such lien is paid. If he voluntarily surrenders possession of such motor vehicle, he has not waived his lien but he has waived his right to possession. At the time of such waiver the debt for the repairs and parts was due. It was just as much due then as at any time in the future. The condition, whether expressed or implied, for making the repairs or furnishing the parts was that the owner or person in possession of the motor vehicle who requested the repairs or parts to be made or furnished would pay for the same. The time of payment might be a matter of agreement, but, so far as the right to retain possession under the lien was concerned, the debt was due immediately upon furnishing the repairs or parts. If, under that situation, the mechanic or garageman voluntarily parts with the possession, he cannot recover such possession without making a showing that the conditions have changed after such voluntary surrender of possession. There is no showing in this case. So far as facts alleged are concerned, the plaintiff was as much entitled to possession at the time he parted therewith as he was at the time he commenced his suit. In the article on Replevin in 34 Cyc., at page 1392, it is stated that—

"Replevin is the appropriate remedy on behalf of one having a lien on chattels, for the purpose of obtaining possession of which he is wrongfully deprived."

That is a salutory doctrine, but it has no application to this case. Plaintiff in replevin must show ownership, either general or special, in the property, and, as has been seen, a chattel mortgage does not pass title to the property. It is the breach of a condition of the mortgage which vests a sort of special interest or property in the mortgagee. It is our

opinion that the statute under consideration does
not purport to vest any higher grade of ownership
or interest in the property upon which repairs are
made or parts furnised therefor than is vested in a
mortgagee by a chattel mortgage. Section 4340 of
the Code, being a portion of the article of Replevin,
provides:

"Any person having a right to the immediate possession
of any goods or chattels, wrongfully taken or wrongfully
detained, may bring an action of replevin for the recovery
thereof."

In the article on Replevin in 34 Cyc., at page
1388, it is declared:

"Although, as has been stated, the right to possession is
sufficient to maintain an action of replevin, such right can
only arise by virtue of some general or special ownership,
hence it is necessary that plaintiff possess some property
right in the goods or chattels in question, or, as it is fre-
quently stated, the right to possession must be coupled with
ownership, either general or special."

The exact nature of the special ownership which
will sustain the action of replevin has not been very
accurately defined. In Frazier v. State, 18 Tex.
App. 434, 441, cited in 36 Cyc. 523, a special owner
was thus defined (7 Words and Phrases, 6585):

"A special owner of chattels is some person holding the
property with the consent and as the representative of the
actual owner."

In Holliday v. Lewis, 15 Mo. 282, it was decided
that—

"A party who never has had the actual possession of
personal property, and who is not the general owner, can-
not maintain replevin against a party in actual possession.
The general rule, both in trover and replevin, is that a
person having only a special property, or interest of a
temporary or limited nature, must have had the
possession."

And the court further said:

"Chitty, in this treatise on Pleading, says a person having
a special property in the goods may support trover against
a stranger who takes the goods out of his actual pos-
session; as a sheriff, carrier, factor, a warehouseman, con-
signee, pawnee, or trustee, or an agister of cattle. 1 Chitty's
Pl. 173. There must be actual possession; the goods must
be taken from the possession of him who has the special

Mathieu v. Roberts, 31 N. M. 469

property. 'An action for an injury to personalty may also be brought in the name of the person having only a special property or interest of a limited or temporary nature therein. But in this case the general rule seems to be that the party should have had possession.' Greenleaf speaking of evidence in trover, says, there must be shown in the plaintiff a right to the present possession of the goods. If he has only a special property, there must ordinarily be evidence of actual possession."

Plaintiff had a lien on the automobile, coupled with actual possession, and with the right under the statute to continue in possession thereof until the lien debt was paid. These facts, taken together, created in him an interest which he could protect in an action of replevin against any one unlawfully interfering with his possession. When, however, he voluntarily parted with the possession of the automobile, he waived all right to the possession thereof, and was in no better situation so far as status of special ownership was concerned than if he had never been in possession of such automobile.

It would have been open to the defendant in a foreclosure of the lien in equity in accordance with the procedure in the foreclosure of chattel mortgages to have secured an attachment or sequestration of the property under proper showing.

"On foreclosure in equity, the court may take into its custody the mortgaged property in order to preserve the status quo for the benefit of all parties, and it may do this through the agency of a receiver." 11 C. J. "Chattel Mortgages," § 549.

The occasion for such relief usually arises upon showing that the property is inadequate to secure the debt, the insolvency of the lienee, or danger that the property will be lost or materially injured.

Plaintiff not only did not proceed in that manner, but his idea was that he was entitled to regain possession by writ of replevin, and, having thus regained possession, to sell the property under the provisions of the latter part of section 26, c. 24, Laws of 1923, above quoted. In this the plaintiff is mistaken.

In Security Bank & Trust Co. v. Bond, 132 Ark. 592,

201 S. W. 820, it was held that, in order to recover possession of chattels, plaintiff must show title in the property wrongfully taken or detained, and that a landlord could not maintain replevin of certain bales of cotton upon which he had a landlord's lien for rent; a mere lien not being enough. The court cited Knox v. Hellums, 38 Ark. 413, where it was held that the landlord who had a lien for rent, and to whom the tenant had turned over cotton to pay the rent, could maintain replevin for the conversion of the cotton by a third party, holding that the proof of the possession of the cotton by the landlord was sufficient showing of title, but said that the trial court properly refused an instruction offered by the defendant that—

"If the proof should show the fact that the plaintiff has a lien on the bale of cotton for rent, it gives him no right to recover it in this action, and he had no right to take possession of it under such lien."

The court remarked that—

"If the proof had been that plaintiff had nothing but a landlord's lien on the cotton, this instruction would have been applicable and law. In such case, he would have to resort to attachment or bill in chancery to enforce his lien. But the instruction ignores the evidence that the cotton was turned over to the plaintiff by the tenant to pay the rent, etc., and was properly refused. Flash, Lewis & Co. v. Gresham, 36 Ark. 529."

We are aware that under some statutes the debtor in a suit against him to foreclose a lien is entitled to replevin the property upon his giving a proper bond or undertaking. 37 C. J. on Liens, par. 68.

So far as our investigation goes, there are very few statutes which specifically provide for replevin as a remedy in the enforcement of liens; New Mexico not being one of these.

From all of the foregoing, it clearly appears that the judgment of the district court was correct, and should be affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.